## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                 Case No:  5:14-cv-387-Oc-30PRL

ALPHONSO JAMES, SR., et al.,

      Defendants.

_____/

# <u>ORDER</u>

THIS CAUSE comes before the Court upon Plaintiff United States of America's Motion for Summary Judgment and Final Default Judgment (Doc. 68) and Defendant Alphonso James, Sr.'s response in opposition thereto (Doc. 80).  Defendants Dorothy Martin, Veronica Rogers, and David Dockery, Sr. did not file responses to the motion.

Plaintiff commenced this action on behalf of Assistant United States Attorney Robert Barclift, Judge Elizabeth Kovachevich, Judge Steven Merryday, Assistant United States Attorney Jeffrey Michelland, Assistant United States Attorney Douglas Molloy, United States Attorney Paul Perez, Judge John Steele, Assistant United States Attorney Russell Stoddard, and Magistrate Judge George Swartz (collectively the "Federal Officers"), asserting that Defendants filed or caused to be filed fraudulent Uniform Commercial Code ("UCC") financing statements and other documents purporting to create

liens against the Federal Officers in retaliation for their participation in James's 2005 criminal prosecution.

Specifically, by the present motion, the United States currently seeks (1) declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, against James, Martin, Rogers, and Dockery (Count I), (2) injunctive relief pursuant to the Mail Fraud Injunction Act, 18 U.S.C. § 1345, against James, Martin, Rogers, and Dockery (Count II), (3) civil penalties pursuant to the False Claims Act, 31 U.S.C. § 3729, against James (Counts III and IV), and (4) statutory liquidated damages pursuant to Florida Statute § 679.625(5) against James (Count V).[1]   The Court, having considered the motion, James's response, and the record evidence, and being otherwise fully advised in the premises, concludes that Plaintiff's motion should be granted in part and denied in part.

## FINDINGS OF FACT

There is no substantive or genuine dispute of the following facts.

### 1.  James's Criminal Proceedings

On April 5, 1995, James was arrested in Fort Myers, Lee County, Florida, on various charges, including possession of a firearm by a convicted felon.[2]   *See United States v. James*, No. 2:95-cr-33-FtM-23 (M.D. Fla. 1995).[3]   On May 30, 1995, an indictment was filed charging James with possession of a firearm by a convicted felon, in violation of 18

---

[1]In its complaint, Plaintiff originally sought relief against all Defendants under all five counts of the complaint, but by its present motion, Plaintiff moves only for default judgment against Rogers, Martin, and Dockery as to Counts I and II of the complaint.  (Doc. 68 at 27).

[2]The Court may take judicial notice of filings in cases tried before this Court.  *See ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981) (noting that a court may take judicial notice of its own records).

[3]Filings from James's criminal case will hereinafter be cited as CR. Doc. ___.

U.S.C. §§ 922(g), 924(e).  (CR Doc. 1).  Magistrate Judge George Swartz presided over James's pretrial proceedings, including his initial appearance and detention hearing.  (CR Docs. 5, 8).  On July 6, 1995, Judge Kovachevich presided over a status conference.  (CR Doc. 14).

James's trial, over which Judge Merryday presided, took place September 12 through 14, 1995, and James was convicted as charged.  (CR Docs. 40-43, 47).  Judge Merryday sentenced James to 262 months' imprisonment.  (CR Doc. 58).  James subsequently filed several postconviction motions, which were handled by Judge Steele. *See James v. United States*, 2:96-cv-251-FtM-29 (M.D. Fla. July 12, 1996).  Assistant United States Attorneys Barclift, Michelland, Molloy, and Stoddard appeared on behalf of the United States during various stages of James's criminal proceedings, beginning with James's initial appearance and through conclusion of his postconviction motions.  (CR Doc. 248; Doc. 69, Barclift Decl. at 2).  United States Attorney Perez was the United States attorney for the Middle District of Florida from 2002 until 2007, but he was not directly involved in any phase of James's criminal proceedings.  (Doc. 69, Barclift Decl. at 2).

**2.  The Filings**

On October 29, 1998, James filed a "Notice of Security (15 U.S.C.) Claim of Commercial Lien and Criminal Complaint," in the official records of Lee County, Florida, naming himself as "lien claimant" and Magistrate Judge Swartz, Judge Kovachevich, Judge Merryday, and Assistant United States Attorneys Stoddard, Barclift, Michelland, and

Molloy as "lien debtors."[4]  (Doc. 68, Ex. 1, Instrument No. 4498080).  The notice asserts

that the Federal Officers conspired to wrongly convict James and violated their oaths of

office.  (Doc. 68, Ex. 1).  James asserted that he was entitled to a lien against the Federal

Officers because he "suffered a grievous wrong through his false imprisonment and

continues to suffer severe mental torture and physical restraints."  (Doc. 68, Ex. 1 at 2).

James certified that a copy of the notice was sent to Judge Merryday, Judge Kovachevich,

and Assistant United States Attorneys Barclift, Michelland, Molloy, and Stoddard, using

the United States Postal Service.  (Doc. 68, Ex. 1 at 8).

James took no further action until November 2000 when James began filing UCC

financing statements and other documents purporting to create liens against the Federal

Officers in either the official records of Lee County, Florida, or with the Florida Secured

Transaction Registry.   Specifically, James filed or caused to be filed the following

documents against the Federal Officers:

- **Magistrate Judge Swartz**: On November 13, 2000, James filed a UCC financing statement in the official records of Lee County, Florida, naming Magistrate Judge Swartz and "his wife" as the debtors and purporting to create a lien against Magistrate Judge Swartz and his wife in the amount of $100,000,000.00.  (Doc. 68, Ex. 3, Instrument No. 5001274).  Attached to the financing statement was a "judgment by nihil dicit," which declared that Magistrate Judge Swartz breached his oath of office due to his participation in James's criminal proceedings.  On December 5, 2002, James filed a UCC statement of change assigning his alleged lien right to Register of Wills Constance G. Evans.  (Doc. 68, Ex. 14, Instrument No. 5644439).  On October 1, 2003, James filed an "Order" from the "Justices' court" in Garfield County, Montana, stating that Magistrate Judge Swartz defaulted by failing to respond to the financing statement and entering "judgment" against Magistrate Judge Swartz in the amount of $100,000,000.00.  (Doc. 68, Ex. 22, Instrument No. 5990293).  On May 20, 2005, December 29, 2009, and March 26, 2014, James filed continuations of the financing

---

[4]James filed a duplicate of this document on November 2, 1999.  (Doc. 68, Ex. 2, Instrument No. 4746689).

statement, purporting to extend the lien for five additional years. (Doc. 68, Ex. 26, Instrument No. 6802745; Ex. 54, Instrument No. 2009000343413; Ex. 61, Instrument No. 2014000060700). On February 7, 2007, James filed an amendment to the financing statement terminating the assignment to Register of Wills Constance G. Evans. (Doc. 68, Ex. 34, Instrument No. 2007000041866).

- **AUSA Molloy**: On November 13, 2000, James filed a UCC financing statement in the official records of Lee County, Florida, naming AUSA Molloy and "his wife" as the debtors and purporting to create a lien against AUSA Molloy and his wife in the amount of $100,000,000.00. (Doc. 68, Ex. 4, Instrument No. 5001275). Attached to the financing statement was a "judgment by nihil dicit," which declared that AUSA Molloy breached his oath of office due to his participation in James's criminal proceedings. On December 5, 2002, James filed a UCC statement of change assigning his alleged lien right to Register of Wills Constance G. Evans. (Doc. 68, Ex. 13, Instrument No. 5644438). On October 1, 2003, James filed an "Order" from the "Justices' court" in Garfield County, Montana, stating that AUSA Molloy defaulted by failing to respond to the financing statement and entering "judgment" against AUSA Molloy in the amount of $100,000,000.00. (Doc. 68, Ex. 24, Instrument No. 5990296). On May 20, 2005, December 29, 2009, and March 26, 2014, James filed continuations of the financing statement, purporting to extend the lien for five additional years. (Doc. 68, Ex. 27, Instrument No. 6802746; Ex. 55, Instrument No. 2009000343414; Ex. 60, Instrument No. 2014000060699). On February 7, 2007, James filed an amendment to the financing statement terminating the assignment to Register of Wills Constance G. Evans. (Doc. 68, Ex. 35, Instrument No. 2007000041867).

- **AUSA Barclift**: On November 13, 2000, James filed a UCC financing statement in the official records of Lee County, Florida, naming AUSA Barclift and "his wife" as the debtors and purporting to create a lien against AUSA Barclift and his wife in the amount of $100,000,000.00. (Doc. 68, Ex. 5, Instrument No. 5001276). Attached to the financing statement was a "judgment by nihil dicit," which declared that AUSA Barclift breached his oath of office due to his participation in James's criminal proceedings. On December 5, 2002, James filed a UCC statement of change assigning his alleged lien right to Register of Wills Constance G. Evans. (Doc. 68, Ex. 12, Instrument No. 5644437). On October 1, 2003, James filed an "Order" from the "Justices' court" in Garfield County, Montana, stating that AUSA Barclift defaulted by failing to respond to the financing statement and entering "judgment" against AUSA Barclift in the amount of $100,000,000.00. (Doc. 68, Ex. 21, Instrument No. 5990292). On May 20, 2005, December 29, 2009, and March 26, 2014, James filed continuations of the financing statement, purporting to extend the lien for five additional years. (Doc. 68, Ex. 28, Instrument No. 6802747; Ex. 56, Instrument No. 2009000343415; Ex. 62, Instrument No. 2014000060701). On February 7, 2007, James filed an amendment to the financing statement terminating the assignment to Register of Wills Constance G. Evans. (Doc. 68, Ex. 37, Instrument No. 2007000041869).

- **AUSA Michelland**: On November 13, 2000, James filed a UCC financing statement in the official records of Lee County, Florida, naming AUSA Michelland and "his wife" as the debtors and purporting to create a lien against AUSA Michelland and his wife in the amount of $100,000,000.00. (Doc. 68, Ex. 6, Instrument No. 5001277). Attached to the financing statement was a "judgment by nihil dicit," which declared that AUSA Michelland breached his oath of office due to his participation in James's criminal proceedings. On December 5, 2002, James filed a UCC statement of change assigning his alleged lien right to Register of Wills Constance G. Evans. (Doc. 68, Ex. 10, Instrument No. 5644435). On October 1, 2003, James filed an "Order" from the "Justices' court" in Garfield County, Montana, stating that AUSA Michelland defaulted by failing to respond to the financing statement and entering "judgment" against AUSA Michelland in the amount of $100,000,000.00. (Doc. 68, Ex. 19, Instrument No. 5990290). On May 20, 2005, December 29, 2009, and March 26, 2014, James filed continuations of the financing statement, purporting to extend the lien for five additional years. (Doc. 68, Ex. 30, Instrument No. 6802749; Ex. 53, Instrument No. 2009000343412; Ex. 63, Instrument No. 2014000060702). On February 7, 2007, James filed an amendment to the financing statement terminating the assignment to Register of Wills Constance G. Evans. (Doc. 68, Ex. 33, Instrument No. 2007000041865).

- **AUSA Stoddard**: On November 13, 2000, James filed a UCC financing statement in the official records of Lee County, Florida, naming AUSA Stoddard and "his wife" as the debtors and purporting to create a lien against AUSA Stoddard and his wife in the amount of $100,000,000.00. (Doc. 68, Ex. 7, Instrument No. 5001278). Attached to the financing statement was a "judgment by nihil dicit," which declared that AUSA Stoddard breached his oath of office due to his participation in James's criminal proceedings. On December 5, 2002, James filed a UCC statement of change assigning his alleged lien right to Register of Wills Constance G. Evans. (Doc. 68, Ex. 11, Instrument No. 5644436). On October 1, 2003, James filed an "Order" from the "Justices' court" in Garfield County, Montana, stating that AUSA Stoddard defaulted by failing to respond to the financing statement and entering "judgment" against AUSA Stoddard in the amount of $100,000,000.00. (Doc. 68, Ex. 23, Instrument No. 5990294). On May 20, 2005, December 29, 2009, and March 26, 2014, James filed continuations of the financing statement, purporting to extend the lien for five additional years. (Doc. 68, Ex. 29, Instrument No. 6802748; Ex. 57, Instrument No. 2009000343416; Ex. 64, Instrument No. 2014000060703). On February 7, 2007, James filed an amendment to the financing statement terminating the assignment to Register of Wills Constance G. Evans. (Doc. 68, Ex. 36, Instrument No. 2007000041868).

- **Judge Merryday**: On November 7, 2002, James filed a UCC financing statement in the official records of Lee County, Florida, naming Judge Merryday and "his wife" as the debtors and purporting to create a lien against Judge Merryday and his wife in the amount of $100,000,000.00. (Doc. 68, Ex. 8, Instrument No. 5618702). On December

5, 2002, James filed a second financing statement naming Judge Merryday and his wife as the debtors and purporting to create a lien against Judge Merryday and his wife in the amount of $100,000,000.00. (Doc. 68, Ex. 15, Instrument No. 5644441). Attached to the second financing statement was a "judgment by nihil dicit," which declared that Judge Merryday breached his oath of office due to his participation in James's criminal proceedings. On June 8, 2007, James filed a continuation of the financing statement purporting to extend the lien for five additional years. (Doc. 68, Ex. 38, Instrument No. 2007000183465). On August 4, 2008, James filed an amendment to the financing statement, which was intended to act as a notification of the lien. (Doc. 68, Ex. 43, Instrument No. 2008000208435). On December 21, 2011, James filed a second continuation of the financing statement purporting to extend the lien for another five years. (Doc. 68, Ex. 58, Instrument No. 2011000273669).

- **Judge Kovachevich**: On November 7, 2002, James filed a UCC financing statement in the official records of Lee County, Florida, naming Judge Kovachevich and "her husband" as the debtors and purporting to create a lien against Judge Kovachevich and her husband in the amount of $100,000,000.00. (Doc. 68, Ex. 9, Instrument No. 5618704). On December 5, 2002, James filed a second financing statement naming Judge Kovachevich and her husband as the debtors and purporting to create a lien against Judge Kovachevich and her husband in the amount of $100,000,000.00. (Doc. 68, Ex. 16, Instrument No. 5644444). Attached to the second financing statement was a "judgment by nihil dicit," which declared that Judge Kovachevich breached her oath of office due to her participation in James's criminal proceedings. On June 8, 2007, James filed a continuation of the financing statement purporting to extend the lien for five additional years. (Doc. 68, Ex. 39, Instrument No. 2007000183468). On December 21, 2011, James filed a second continuation of the financing statement purporting to extend the lien for another five years. (Doc. 68, Ex. 59, Instrument No. 2011000273671).

- **U.S. Attorney Perez**: On October 26, 2007, James filed a UCC financing statement with the Florida Secured Transaction Registry, naming U.S. Attorney Perez as the debtor and purporting to create a lien against U.S. Attorney Perez in the amount of $12,400,000,000.00. (Doc. 68, Ex. 71, Instrument No. 200706865454). Attached to the financing statement is a "Notice of Security (15 U.S.C.) Claim and Commercial Lien and Security Agreement and judgment by nihil dicit," which states that the lien is authorized because U.S. Attorney Perez violated his oath of office due to his participation in James's criminal proceedings. On January 23, 2008, James filed in the official records of Lee County, Florida, a notice of the financing statement originally filed with the Florida Secured Transaction Registry. (Doc. 68, Ex. 41, Instrument No. 2008000019587).

- **Judge Steele**: On October 26, 2007, James filed a UCC financing statement with the Florida Secured Transaction Registry, naming Judge Steele as the debtor and purporting

to create a lien against Judge Steele in the amount of $12,400,000,000.00.  (Doc. 68, Ex. 70, Instrument No. 200706865446).  Attached to the financing statement is a "Notice of Security (15 U.S.C.) Claim and Commercial Lien and Security Agreement and judgment by nihil dicit," which states that the lien is authorized because Judge Steele violated his oath of office due to his participation in James's criminal proceedings.  On January 23, 2008, James filed in the official records of Lee County, Florida, a notice of the financing statement originally filed with the Florida Secured Transaction Registry.  (Doc. 68, Ex. 40, Instrument No. 2008000019586).

Each financing statement filed by James against the Federal Officers names James as the secured party and the Federal Officer and, in most cases, his or her spouse as the debtors.  (Doc. 68, Exs. 3-9, 15-16, 70-71).  But the Federal Officers are not indebted to James in any manner, and they did not consent to or otherwise authorize the filing of the financing statements or related documents.  (Doc. 69, Barclift Decl. at 6; Doc. 74, Michelland Decl. at 6).  James does not dispute that the Federal Officers were not indebted to him; rather he asserts that he can impose the liens by merely providing notice to the party to be liened, and, if that party does not respond, that party has defaulted and the lien is perfected.  (Doc. 70, Bolin Decl. at 4).  Although each financing statement bears James's signature, none of the financing statements contain the Federal Officers' signatures indicating their consent to the liens purportedly created by the documents.[5]  (Doc. 68, Exs. 3-9, 15-16, 70-71; Doc. 69, Barclift Decl. at  6; Doc. 74, Michelland Decl. at 6).  In filing these liens and other documents, James utilized the United States Postal Service by mailing the documents or causing them to be mailed.  (Doc. 70, Bolin Decl. at 3; Doc. 71, Evans Decl. at 2-5, Exs. A-D; Doc. 68, Ex. 72).

---

[5]James does not dispute that the documents do not contain the signatures of the Federal Officers. (Doc. 80 at 8).  Rather he contends that their signatures are not necessary for them to be bound.  (Doc. 70, Bolin Decl. at 4; Doc. 80 at 8).

The financing statements and attachments thereto indicate that James filed the liens because of wrongs he perceived based upon the Federal Officers' participation in his 1995 criminal proceedings.  (Doc. 68, Exs. 3-7, 15-16, 71-70; Doc. 70, Bolin Decl. at 2-3, 7-8). In participating in James's criminal proceedings, each Federal Officer was acting in his or her official capacity and in the course and scope of his or her employment with the United States Government.  (Doc. 69, Barclift Decl. at 6-7; Doc. 74, Michelland Decl. at 6-7).

### 3.  Martin and Rogers's Involvement

Martin and Rogers, while not named as secured parties in the financing statements initially filed by James, are named either as assignees or in subsequent filings that purport to amend, continue, or transfer the interests purportedly created by the financing statements.  For example, Martin is named as an "assignee of secured party" in several of the financing statements filed by James.  (Doc. 68, Exs. 3-9, 15-16).  Additionally, several documents purport to amend the secured party under the financing statements from James to Martin and give Martin an interest in the Federal Officers' alleged debts if ever enforced. (Doc. 68, Exs. 48-52).

Martin also utilized the United States Postal Service to send to James an invoice, signed by Martin, asserting entitlement to payment for "performing requested Legal, Paralegal, Financial and Private Banking Services," as well as for an interest in James's "additional Debtors and Subsidiaries."  (Doc. 68, Exs. 44-47, 51).  The invoice is attached to a UCC financing statement amendment form, which, among other things, assigns a portion of the obligation allegedly created by instrument number 200706965454 (i.e., the

financing statement naming United States Attorney Perez as debtor) to Martin.  (Doc. 68, Ex 51).

The extent of Rogers's involvement is limited to the inclusion of her name and address as the return address on several of the documents filed by James.  (Doc. 68, Exs. 10-18).

### 4.  James's Sovereign Citizen Filings

Based on James filings in the Lee County Official Records, the Florida Secured Transaction Registry, and with this Court, and based upon James's own declaration, James is an adherent of the sovereign citizen movement.  (Doc. 70, Bolin Decl. at 3).  For example, in 2004, James filed a "Notice Declaration & Certificate of Sovereign Status" declaring himself a "Sovereign American," who is "Non-Incorporated, Statutorily Incapacitated, Statute Immune, Tax Immune, Tax-Exempt, EXEMPT from Levy and claims Diplomatic Immunity."[6]  (Doc. 68, Ex. 68).

In 2005, James filed a "Common Law Copyright Notice" that attempts to create a copyright or trade name protection in his name and to preclude any "Juristic Person" from using his name without his permission.  (Doc. 68, Ex. 69).  James has also used the copyright symbol next to his name in various documents.  (*See, e.g.*, Doc. 68, Exs. 46-47, 75).  In 2008, James filed liens against himself, which appears to be an attempt by James to redeem his "straw man."[7]  (Doc. 68, Exs. 46-47).  In filing these liens against himself,

---

[6]In his response to Plaintiff's motion for summary judgment, James repeatedly asserts that his UCC filings are "outside the jurisdiction of the corporate United States of America" and that there is no jurisdiction to enforce a claim against him.  (Doc. 80 at 2, 3).

[7]Redemptionist theory, a tenant of the sovereign citizen movement:

James cites to instrument number 20070695454 (i.e., the financing statement naming United States Attorney Perez as debtor).

## 5.  Dockery's Involvement

On November 4, 2011, James executed a general power of attorney, naming Dockery[8] his attorney-in-fact and purporting to grant Dockery the authority to exercise control over the liens filed against the Federal Officers.  (Doc. 68, Ex. 65; Doc. 72, Decl. of LoBianco, at 2).  The document was filed in the Palm Bach County Official Records.  It appears that Dockery was the individual who filed the general power of attorney form because the Palm Beach County records reflect that the document was filed by an individual residing at Dockery's address in West Palm Beach, Florida.  (Doc. 68, Ex. 65; Doc. 72, Decl. LoBianco, at 3, Ex. C).  Several of the documents filed by James against the Federal Officers also provide Dockery's address as the return address.  (Doc. 68, Exs. 58, 59).

---

> propounds that a person has a split personality: a real person and a fictional person called the "strawman." . . . Redemptionists claim that government has power only over the strawman and not over the live person, who remains free [and, thus,] individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman.  Thereafter, [pursuant to this "theory,"] the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody.  If government officials refuse, [adherents of this scheme] file liens against [government officials].  Adherents of this scheme also advocate that [they] copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Monroe v. Beard*, 536 F.3d 198, 203 (3d Cir. 2008).  Indeed, in the present case, James asserts that Plaintiff's motion for summary judgment is an infringement upon James's "trade/name-trademark."  (Doc. 80 at 2).  This argument is patently ridiculous and entirely without merit.

[8]Dockery was previously incarcerated, at least for a time, in the same federal correctional facility as James, and the two briefly shared a cell and were housed within the same dormitory.  (Doc. 73, Decl. Matthews, at 2-4).  Dockery was released from federal custody on June 24, 2011.  (Doc. 73, Decl. Matthews, at 2).

On April 23, 2012, James mailed Dockery a letter notifying Dockery that James had attempted to contact FloridaUCC, Inc., the entity responsible for managing the Florida Secured Transaction Registry, to determine the registry file number of a lien.  (Doc. 68, Ex. 72).   James informed Dockery that once he received the registry number, "I can combine our 'NOTE' to this UCC-1 Redemption File, and then we can do business with the 'LIEN,' $100,000,000.00 . . . against U.S. District Judge Steven D. Merryday" (Doc. 68, Ex. 72).  In a letter to Dockery dated April 24, 2012, James states, "I AM writing this letter to you of concern about the $100,000,000.00 . . . Judgment that we have on Steven D. Merryday, U.S. District Court Judge, it's time to take action against this judge." (Doc. 68, Ex. 72).  James then directs Dockery to send a money order and documents to Charlie Green, Clerk of Circuit Court, in Fort Myers, Florida, and further explains his plan for attempting to enforce the lien against Judge Merryday.  (Doc. 68, Ex. 72).

**6. James Attempts to Collect on the Lien Against Judge Merryday**

On March 17, 2014, James used certified mail[9] to mail to Judge Merryday at the federal courthouse in Tampa an "Affidavit of Mailing," which attached a "Notice to Debtor Steven D. Merryday."  (Doc. 68, Ex. 75).  By the notice, James references instrument number 5644441 (i.e., the financing statement filed against Judge Merryday) and asserts that Judge Merryday "voluntarily agree[d] to allow [James] to uncontestedly exercise [his] rights after <u>delictual fault</u>."  (Doc. 68, Ex. 75 at 1).  James further states that "a CONFIRMATION OF DEFAULT AND CREATION OF CONTRACTUALLY

---

[9]The notice contains a certified mail number, which was a valid United States mailing tracking number.  (Doc. 68, Ex. 76).

BINDING AND ENFORCEABLE JUDGMENT, has been perfected against you has entered into bilateral contract between me and you."  (Doc. 68, Ex. 75 at 2).

## SUMMARY JUDGMENT

### 1. Standard

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *Anderson*, 477 U.S. at 248-49.

13

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## 2. Analysis

### A. Counts I and II: Declaratory Judgment and the Mail Fraud Injunction Statute

Count I of the complaint seeks a declaration under § 2201 that the financing statements and other documents filed by James against the Federal Officers are fraudulent and void. (Doc. 1 at 31). Plaintiff also requests that the Court issue an order directing that the documents be removed from the registry or official records in which they were filed, or alternatively, a notation in the registry or official records that the documents have been declared void. (Doc. 1 at 31). Count II of the complaint seeks a permanent injunction pursuant to 18 U.S.C. § 1345(a)(1) prohibiting James from filing or causing to be filed liens and other fraudulent documents in official records or registries, like the documents at issue in this case, unless the liens or documents have been reviewed by a magistrate judge in the Middle District of Florida. (Doc. 1 at 32).

The Court will address Plaintiff's claim for injunctive relief (Count II) first.  Section 1345(a)(1) permits the government to commence a civil action to enjoin the current or future commission of fraud, including mail fraud as described by 18 U.S.C. § 1341.  To qualify for relief under § 1345(a)(1), Plaintiff must demonstrate that it is entitled to injunctive relief and that fraud has been committed and the extent of such fraud.  *United States v. Williams*, 476 F. Supp. 2d 1368, 1374 (M.D. Fla. 2007); *see also United States v. Leitner*, No. 3:10-cv454/RS/CJK, 2011 WL 2532745, at *9 (N.D. Fla. June 6, 2011).  Injunctive relief is warranted if a plaintiff can demonstrate (1) success on the merits, (2) continuing irreparable injury, (3) that injunctive relief would balance the hardships, and (4) that injunctive relief is in the public interest.  *Williams*, 476 F. Supp. 2d at 1374.

As to the first factor, Plaintiff must demonstrate success on the merits, which requires showing that James committed mail fraud as described under § 1341.  Mail fraud occurs where an individual devises "a scheme or artifice to defraud or to obtain money or property by false or fraudulent pretenses and, with an intent to defraud, knowingly use[s] the Postal Service . . . for the purpose of executing or attempting to execute such scheme or artifice."  *Id.*  at 1374 (citing § 1341).  Here, Plaintiff has adequately demonstrated, and James does not dispute, that James utilized the United States Postal Service to deliver some, if not most, of the financing statements and documents filed against the Federal Officers.  Moreover, it is patently obvious that the rights and liabilities James attempted to create against the Federal Officers in filing these documents have no basis in law or fact and are fraudulent and invalid.  No state or federal law exists allowing a citizen who feels aggrieved to file a lien against a public official for that official's performance of his or her duties.

15

The United States has also demonstrated that James knowingly filed these documents in an attempt to defraud and harass the Federal Officers for the performance of their lawful duties. Thus, Plaintiff has adequately established James committed mail fraud and that its claim succeeds on the merits.

Plaintiff has also demonstrated irreparable injury to the Federal Officers if injunctive relief is not granted because the filing of such fraudulent documents on the public record bestows the documents with a presumption of validity and could hamper the Federal Officers' ability to engage in financial transactions. *See id.* at 1377 (concluding that the filing of bogus liens against federal employees causes irreparable harm); *Leitner*, 2011 WL 2532745, at *8 (same). An injunction would serve the purpose of preventing James from simply refiling such documents against the Federal Officers.

As to the balance of hardships, the harm sought to be prevented by the injunction outweighs the inconvenience to James of being enjoined from filing similar documents. First, and most important, James has no right to file fraudulent documents creating rights and liabilities that do not exist. Second, to the extent that James may have valid claims or liens, James will still be permitted to file such documents provided they are first reviewed to determine whether they have a legitimate basis. Finally, the injunction will prevent James from harassing federal employees and interfering with the performance of their lawful governmental functions.[10]

---

[10]The Court notes that James's harassment of these Federal Officers for the performance of their lawful duties related to his criminal proceedings has included, not only the filing of these fraudulent financing statements and liens, but also the filing of frivolous civil and criminal complaints against the Federal Officers. *See, e.g.*, *James v. Molloy*, No. 2:13-cv-293-FtM-29SCP (M.D. Fla. Apr. 1, 2013); *James v. Molloy*, No. 2:12-cv-597-Ftm-29SPC (M.D. Fla. Nov. 1, 2012); *James v. Molloy*, No. 2:11-cv-719-FtM-

Finally, the public interest weighs in favor of the injunction because it is in the best interest of the public to ensure that official records contain only valid documents.  It is also in the public interest to prevent the harassment of federal employees for the mere act of carrying out their official duties.  Such protection allows federal employees to perform the functions of their employment without fear of retaliation from disaffected citizens.

Because Plaintiff has demonstrated that James committed mail fraud under § 1341, and that the factors of irreparable harm, balance of hardships, and the public interest weighs in favor of injunctive relief, Plaintiff is entitled to summary judgment on Count II.  Similarly, because Plaintiff has demonstrated that the documents filed by James are fraudulent and without a basis in law or fact, declaratory relief is warranted.  Plaintiff is therefore entitled to summary judgment as to Count I as well.

## B.  Counts III and IV: False Claims Act

Counts III and IV allege violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), (a)(3).  (Doc. 1 at 32-35).  Under § 3729, individuals are liable to the United States for damages and a civil penalty, if they knowingly use, or cause to be made or used, a false record or statement material to a false or fraudulent claim, or if they conspire to commit such a violation.  § 3729(a)(1)(B)-(C).  Plaintiff seeks civil penalties against James in the amount of $11,000 for each financing statement initially filed against the Federal Officers for a total amount of $99,000.  (Doc. 1 at 32-35).

---

99DNF (M.D. Fla. Dec. 27, 2011); *James v. Merryday*, No. 2:10-cv-572-FtM-36DNF (M.D. Fla. Sept. 17, 2010); *James v. Merryday*, No. 2:09-cv-737-FtM-99DNF (M.D. Fla. Nov. 6, 2009); *James v. Swartz*, No. 2:99-cv-485-FtM-19 (M.D. Fla. Sept. 21, 1999).

To establish entitlement to summary judgment under § 3729(a)(1), Plaintiff must present evidence showing that (1) James made a "claim" for payment or approval to the United States, (2) the claim was false or fraudulent, and (3) the claim was made knowingly. *See* § 3729(a)(1).  A "claim" as defined under the statute "means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that . . . is presented to an officer, employee, or agent of the United States."  § 3729(b)(2)(A).

The Court concludes that, in the present case, the mere act of filing the financing statements in either the Lee County Official Records or the Florida Secured Transaction Registry does not constitute a "claim" as defined under § 3729(b)(2)(A) where James never attempted to collect on the financing statements or the purported liens created by such statements by presenting a demand for payment to a federal officer, employee, or agent. *See United States v. Pinkston*, No. CIVASA06CA0732 OGNN, 2007 WL 1437690, at *7 (W.D. Tex. May 14, 2007) (concluding that where a defendant had not demanded payment under a false lien, no violation of the False Claims Act occurred because no claim had been made); *compare Williams*, 476 F. Supp. 2d at 1378 (finding a violation of the False Claims Act because the defendant made a demand for payment from an employee of the United States).  Moreover, James admitted that he did not intend to collect money under the liens, but filed the liens as a means of forcing the Federal Officers to obey the law.  (Doc. 70, Bolin Decl. at 3).

However, James did attempt to enforce the lien against Judge Merryday by mailing him a "Notice to Debtor Steven D. Merryday" on March 17, 2014.  (Doc. 68, Ex. 75).  This

notice is a "claim" within the meaning of § 3729(b)(2)(A) because James used the notice in an attempt to enforce the fraudulent lien created against Judge Merryday.[11]  *See United States v. Orrego*, No. 04 CV 0008 SJ, 2004 WL 1447954, at *4 (E.D.N.Y. June 22, 2004).

Plaintiff also asserts that James participated in a conspiracy to violate § 3729(a)(1) because he conspired with Dockery to enforce the fraudulent lien filed against Judge Merryday.  (Doc. 68 at 24).  The Court finds that Plaintiff has presented sufficient evidence to show that James conspired or attempted to conspire with Dockery to enforce the lien against Judge Merryday.  First, James executed and recorded a power of attorney which purported to give Dockery the power to enforce the liens.  (Doc. 68, Ex. 65).  Second, in two letters James sent to Dockery, James specifically enlisted Dockery's assistance in obtaining information to "do business" on the lien with Judge Merryday.  (Doc. 68, Exs. 72-73).

Because James knowingly made a false claim by attempting to enforce the fraudulent lien against Judge Merryday and conspired or attempted to conspire with Dockery to do so, Plaintiff is entitled to summary judgment on Counts III and IV for violation of the False Claims Act as to James's attempt to collect on the lien from Judge

---

[11]Although not specifically cited by Plaintiff in support of its motion for summary judgment, James also attempted to enforce the lien against Judge Merryday in an action filed on March 10, 2008.  *See James v. Merryday*, No. 5:08-cv-105-Oc-10GRJ (M.D. Fla. Mar. 10, 2008) (Doc. 2).  Attached to the complaint filed against Judge Merryday was an "Invoice," which stated that Judge Merryday owed Plaintiff $100,000,000.00 pursuant to an instrument recorded on December 5, 2002, in the official records of Lee County, Florida.  *Id.* (Doc. 2).  Plaintiff recorded the financing statement against Judge Merryday for $100,000,000.00 on December 5, 2002.  (Doc. 68, Ex. 15).

Merryday.  Consequently, the Court concludes that James, as an incarcerated individual,[12] is liable to the government in the amount of $5,500.[13]

## C.  Count V: Florida Statute § 679.625

Finally, under Count V, Plaintiff seeks statutory liquidated damages of $500 against James for each unauthorized financing statement filed against the Federal Officers pursuant to Florida Statute § 679.625.  (Doc. 1 at 35-37).  Under Florida law, an individual may file "an initial financing statement, amendment that adds collateral covered by a financing statement, or amendment that adds a debtor to a financing statement *only if* . . . [t]he debtor authorizes the filing in an authenticated record; [or] [the debtor] authenticat[es] or becom[es] bound as a debtor by a security agreement."  *See* Fla. Stat. § 679.509(1)-(2) (emphasis added).  If a creditor files a record that he or she is not permitted to file under Florida Statute § 679.509(1), then the debtor may recover $500 in statutory damages for each unauthorized filing.  *See* Fla. Stat. § 679.625(5)(c).

The record unequivocally demonstrates that the financing statements purporting to create liens against the Federal Officers are fraudulent and false and their filing was not authorized by the Federal Officers.  Because the filing of these liens was not authorized by the Federal Officers, the liens were not filed in accordance with Florida Statute § 679.625.

---

[12]According to records from the Bureau of Prisons, James was in federal custody from April 15, 1996, until September 25, 2014.  (Doc. 73, Matthews Decl. at 2).  Upon completion of his federal sentence, James was released into the custody of the State of Florida.  (Doc. 36).

[13]Section 3729(a) provides that the civil monetary penalty for each violation shall be not less than $5,000 and not more than $10,000.  Pursuant to the Federal Civil Monetary Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, Pub. L. 104-134, the civil penalty has been increased to not less than $5,500 and not more than $11,000 per violation.  *See* 28 C.F.R. § 85.3(a)(9).

Accordingly, Plaintiff is entitled to summary judgment on Count V and is also entitled to recover $500 in statutory liquidated damages for each of the nine unauthorized financing statements recorded against the Federal Officers for a total amount of $4,500.

## DEFAULT JUDGMENT

### 1. Standard

Pursuant to Federal Rule of Civil Procedure 55, a two-part process exists for obtaining a default judgment. First, the party must obtain an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Second, "the party must apply to the court for default judgment." Fed. R. Civ. P. 55(b). Although "a default is not treated as an absolute confession by the defendant of his [or her] liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007) (internal quotation marks omitted). Thus, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.*

### 2. Analysis

Plaintiff seeks final default judgment pursuant to Rule 55 against Martin, Rogers, and Dockery as to Counts I and II of its complaint seeking declaratory and injunctive relief. (Doc. 68 at 28-32). A clerk's entry of default was previously obtained against Martin, Rogers, and Dockery due to their failure to answer or otherwise respond to Plaintiff's complaint. (Docs. 22, 34).

21

The evidence demonstrates that Martin and Dockery actively participated in James's scheme in at least some way. For example, Dockery filed the form granting him power of attorney to enforce the liens filed by James. (Doc. 68, Ex. 65). As to Martin, Martin filed and signed several forms purporting to amend the secured party under the financing statements to herself as payment for services performed for James. (Doc. 68, Exs. 48-52). For the same reasons discussed in detail above as to Plaintiff's request for summary judgment against James and because the well-pled allegations of Plaintiff's complaint demonstrate that Plaintiff has stated a basis for declaratory and injunctive relief as to Martin and Dockery, Plaintiff is entitled to final default judgment against Martin and Dockery as to Counts I and II of the complaint.

However, as to Rogers, Plaintiff has presented no evidence that Rogers actively and voluntarily participated in James's scheme. Several of the documents filed by James provide Rogers's name and address as the return address. (Doc. 68, Exs. 10-18). But no evidence exists that Rogers acquiesced to the inclusion of her name and address on these forms. There is also no evidence that Rogers was complicit in James's scheme in the same way as Martin and Dockery. Accordingly, Plaintiff is not entitled to final default judgment against Rogers because Plaintiff has not presented sufficient evidence of Rogers's voluntary involvement in James's scheme to defraud the Federal Officers. Not all recourse is lost to Plaintiff. Plaintiff can prevent Rogers's future involvement in James's scheme by serving upon her a copy of the permanent injunction described below, which would accomplish the goal of preventing Rogers from assisting James in refiling these liens against the Federal Officers.

**<u>CONCLUSION</u>**

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1.  Plaintiff United States of America's Motion for Summary Judgment and Final Default Judgment (Doc. 68) is GRANTED in part and DENIED in part as described below.

2.  The Clerk is directed to enter judgment in favor of Plaintiff and against Alphonso James, Sr. as to Counts I-V of the complaint (Doc. 1).  The Clerk is also directed to enter final default judgment against Dorothy Martin and David Dockery, Sr. as to Counts I-II of the complaint (Doc. 1).  Such judgment shall set forth the directives dictated below.

3.  The Court DECLARES that the documents filed in the official records of Lee County, Florida, and the Florida Secured Transaction Registry against Assistant United States Attorney Robert Barclift, Judge Elizabeth Kovachevich, Judge Steven Merryday, Assistant United States Attorney Jeffrey Michelland, Assistant United States Attorney Douglas Molloy, United States Attorney Paul Perez, Judge John Steele, Assistant United States Attorney Russell Stoddard, and Magistrate Judge George Swartz, as described in Plaintiff's complaint (Doc. 1), **are false, fraudulent, null and void, and are of no legal force or effect**.

4.   Upon receipt of a copy of this Order, the documents and any associated documents described in Plaintiff's complaint (Doc. 1) shall either be removed from their respective official records or registries, or if removal is not possible, shall be marked as void or otherwise declared invalid.   Alternatively, a final judgment declaring these documents false, fraudulent, null and void, and of no legal force or effect may be filed with

the official records or registries and each document declared false, fraudulent, null and void, and of no legal force or effect shall be cross-referenced to said final judgment.

5.   The following permanent injunction is issued against Alphonso James, Sr., Dorothy Martin, and David Dockery, Sr.:

a.   Alphonso James, Sr., Dorothy Martin, and David Dockery, Sr., and their officers, agents, servants, employees, attorneys, and any person in active concert with them who receive actual notice of such injunction by personal service or otherwise are PERMANENTLY ENJOINED from filing, or causing to be filed, any financing statement or claim of lien of any kind against any federal employee with the Florida Secured Transaction Registry or any local, state, or federal official or body unless the financing statement or claim of lien is first reviewed by a magistrate judge in the Middle District of Florida and found to have a legal basis.

b.   Violation of this injunction will be considered contempt of this Court, and any such lien, financing statement, or other instrument shall be considered invalid, void ab initio, and of no effect, and as such may be immediately expunged from the record or registry in question.

6.   Alphonso James, Sr. is liable to Plaintiff under the False Claims Act, 31 U.S.C. § 3729, for a civil penalty in the amount of $5,500.

7.   Alphonso James, Sr. is liable to Plaintiff under Florida Statute § 679.625(5)(c) for statutory liquidated damages in the amount of $4,500.

8.   Plaintiff shall have twenty (20) days from the date of this Order to submit a request for costs.

9.   The Clerk is directed to terminate all pending motions as moot and close this

case.

**DONE** and **ORDERED** in Tampa, Florida, this 20th day of November, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

S:\OCALA\14-387 USA v. James.MSJ.docx